IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RANDY BRADY,

        Plaintiff,

v.                                            Case No. 13-2379-SAC

CAROLYN W. COLVIN,
Commissioner of Social Security,

        Defendant.


MEMORANDUM AND ORDER

      This is an action reviewing the final decision of the Commissioner of Social Security which denied plaintiff disability insurance benefits. The matter has been fully briefed by the parties.

**I. General legal standards**

      The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence in the record as a whole, and whether the Commissioner applied the correct legal standards. *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994). When supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989). But the standard "does not allow a court to displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo*." *Trimmer v. Dep't of Labor*, 174 F.3d 1098, 1102 (10th Cir. 1999).

The claimant shall be determined to be under a disability only if he can establish that he has a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents him from engaging in substantial gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that he is not only unable to perform his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d).

## II. Procedural History

Plaintiff, at age 44, filed an application for disability insurance benefits alleging disability due to elbow and neck impairments which produced pain

when he lifted or grasped. At step one, the administrative law judge (ALJ) found that plaintiff had not engaged in substantial gainful activity since August 20, 2007, his alleged onset date. The ALJ found at step two that the plaintiff has severe impairments of degenerative disc disease of the cervical spine, left cubital tunnel syndrome, right lateral humeral epicondylitis, and thoracic spine pain, but found at step three that those impairments did not meet or equal the severity of a listed impairment.

Accordingly, the ALJ determined plaintiff's residual functional capacity (RFC) as follows:

> lift/carry up to 25 pounds occasionally and 10 pounds frequently, but not above shoulder-level; avoid working above shoulder-level; sit 6 of 8 hours; stand/walk 6 of 8 hours; occasional kneel, crouch, and stoop (See Exh. 13E); occasional climb stairs and ramps; avoid climbing ladders, ropes, and scaffolds; avoid crawling, dangerous machinery, unprotected heights, vibration, and extreme cold; avoid forceful grasping, pinching, and gripping bilaterally, such as using a screwdriver, using a hammer, or opening a jar; able to grip and grasp to sort objects like screws and bolts and to file papers; avoid repetitive or constant gripping, grasping, and pinching with the dominant right hand (See Ex. 13E).

Tr. 20.

At step four, the ALJ found the plaintiff unable to perform his past relevant work, but found at step five that Plaintiff could perform other jobs that exist in significant numbers in the national economy such as a clerical assistant or a dispatcher. The ALJ thus determined Plaintiff is not disabled.

## III. RFC

The sole issue Plaintiff raises on appeal is that the ALJ erred in failing to include in the RFC a limitation of occasional "standard" gripping and pinching with Plaintiff's right hand. The VE testified that if the claimant were limited to occasional pinching and gripping in the standard fashion with the right upper extremity, the jobs noted above would be precluded. Tr. 93-94.

The dispute arises from the parties' conflicting interpretations of the medical expert's (ME) testimony. Dr. Levine testified that "I believe he has unlimited use of the upper extremity except the above shoulder level. And no activity requiring strong grasp, pinch, or grip bilaterally. And he could occasionally, repetitively pinch and grip with the right." Tr. 78. Dr. Levine clarified that by pinch he was referring to activities involving the thumb and forefinger and by grip he was referring to the whole hand. Tr. 83.

Plaintiff alleges that although the ALJ found Dr. Levine's opinion highly persuasive, the ALJ selectively picked only the parts of that opinion that were favorable to a finding of non-disability, and ignored the part that was unfavorable. *See Haga v. Altrue*, 482 F.3d 1205, 1208 (10th Cir. 2007). But this is not the case here. The ALJ's decision specifically addresses this issue, and states specific reasons for his conclusion.

First, the ALJ noted Dr. Levine's opinion of the Plaintiff's RFC, including, "No activity requiring "strong" grasp, pinch, or grip bilaterally and he could only occasionally "repetitively" pinch and grip with the right hand."

4

Tr. 25. The ALJ then reviewed Dr. Levine's testimony relating to grasping, gripping and pinching limitations.

> Dr. Levine gave examples of the grasp, grip, and pinch limitations. Dr. Levine explained that the claimant should be able to sort screws or bolts and file papers. He should not be using a hammer or a screwdriver, which would require "strong" grip, grasp, or pinch. He should be able to write and use a keyboard on a computer.
>
> There was considerable follow-up questioning about the claimant's ability to grip and pinch. In response to a question from the undersigned, Dr. Levine stated that "forceful" was probably a better term than "strong" to use in describing his opinion on grasping, pinching, and gripping. Upon cross-examination by the claimant's attorney, Dr. Levine made similar comments. However, at one point, Dr. Levine said the claimant was capable of only occasional "standard" pinching and gripping with the right hand. Following that testimony, Dr. Levine said he did not think of sorting screws and bolts or filing papers as pinching or gripping. Dr. Levine said the claimant could do a "standard" grip for sorting screws and bolts or filing papers and that type of activity, which would not involve a significant pinch. As an example of pinch, Dr. Levine mentioned taking hold of a lever on a lock to unlock a door. Dr. Levine further testified the claimant could use power tools if they did not require a "forceful" pull of a trigger. Dr. Levine stated that examples of "forceful" grip, grasp, and pinch would be using a screwdriver or a hammer or opening a jar.

Tr. 25.

The ALJ's subsequent analysis of Dr. Levine's testimony is consistent with the facts of record.

> The undersigned generally agrees with Dr. Levine's thorough testimony, and therefore has based the above residual functional capacity assessment on Dr. Levine's opinion. The objective and clinical findings in the record do not support limitations beyond those identified by Dr. Levine. Dr. Levine's opinion is well-explained, consistent with the weight of the evidence, and highly persuasive given his expertise as a board-certified orthopedic surgeon and the fact that he is the only doctor who reviewed all of the medical records in the file. Dr. Levine's opinion accounts for all of the claimant's medically determinable impairments. Furher, Dr. Levine's limitations

> regarding pinch, grasp, and grip appear to be consistent with the FCE, with which Dr. Ketchum agreed and found the claimant capable of working. Dr. Ketchum also noted that the last nerve conduction study on the median nerve was normal. While Dr. Levine's testimony, the FCE, and Dr. Ketchum's opinion restating the FCE limitations would allow for occasional "repetitive" grip and pinch, the undersigned's residual functional capacity assessment is more restrictive and does not allow for any "repetitive" grip, grasp, or pinch at all.
> At the end of the hearing, the claimant's attorney elicited testimony from the vocational expert indicating there are no jobs available if the claimant were limited to occasional gripping and handling or occasional "standard" gripping and pinching. Considering Dr. Levine's testimony in its entirety, however, it is clear that he never intended to limit the claimant's ability to handle objects, *e.g.,* sorting screws and bolts or filing papers, to an occasional basis or one-third of the workday. Dr. Levine repeatedly stated his opinion that the claimant's limitations allowed those activities with the right hand, along with using a computer keyboard and even power tools if they did not require "forceful" pulling of a trigger. Dr. Levine also repeatedly stated his opinion that the claimant had no limitation on using his left hand. It is apparent that Dr. Levine only intended to limit a "forceful" grip, grasp, or pinch such as using a screwdriver, using a hammer, opening a jar, or turning a lever to unlock a door.

Tr. 27-28. The Court has reviewed the record and finds no legal error in the ALJ's formulation of the RFC.

The Court reviews the ALJ's interpretation of the medical expert's opinion for reasonableness. *See Jones v. Colvin,* 514 Fed.Appx. 813, 819, 2013 WL 1777333, 5 (10th Cir. 2013) (finding no error because the ALJ's interpretation of the medical expert's opinion, "when read as a whole, was reasonable" in limiting only her ability to reach overhead, and not her ability to reach in all directions.); *Tankersley v. Astrue*, 245 Fed.Appx. 830, 2007 WL 2411711 (10th Cir. 2007) (finding ALJ reasonably interpreted report of disability claimant's treating physician as indicating that claimant was

6

capable of regularly working eight-hour days); *Rudolph v. Astrue*, 2011 WL 2149437, 3 (D.Kan. 2011) (determining whether the ALJ's RFC is a reasonable interpretation of the physician's opinion that plaintiff required frequent breaks to get up and walk about).

The Court has reviewed the record in detail, focusing upon Dr. Levine's testimony regarding the grip, grasp, and pinch limitations, the ALJ's follow-up questions to clarify those limitations, and Plaintiff's questions to Dr. Levine. *See* Tr. 77-85. Although the record evidences some basis for the confusion which prompted this appeal, Dr. Levine's testimony is not ambiguous when read in context. Dr. Levine stated Plaintiff could "only occasionally, repetitively pinch and grip with the right," but immediately offered this example – Plaintiff "should be able to sort screws or bolts, file papers and that type of activity," should not use "a hammer, a screwdriver, and that type of activity, and "should be able to use a keyboard on a computer, write, and that type of work." Tr. 78. Dr. Levine stated Plaintiff's right should not be doing repetitive pinch and grip frequently, which would be two-thirds of the time, but that he could do standard or normal grip and pinch occasionally on the right. Tr. 80-81.

Dr. Levine was questioned by both Plaintiff's attorney and the ALJ regarding Plaintiff's limitations with respect to grip and pinch with his right hand. Plaintiff's attorney then asked Dr. Levine to apply this limitation to work situations.

> Q: Okay. Now this occasional, only occasional pinch and grip with the right hand, correct?
>
> Dr. Levine: Yes.
>
> Q: Now, would not that preclude sorting screws and bolts if that activity was required to be performed more than 33 percent of the time?
>
> Dr. Levine: I don't know that I include pinch and grip activity, pinch and grip by definition in sorting that type of a small object. I wouldn't think in terms of pinching, and the type of activity I'm thinking about is an example … there are certain type[s] of locker doors that require lifting a little handle. That type of pinch activity would be occasional. As far as sorting screws and bolts, unless they were heavy things, but I don't consider that significant pinch.

Tr. 82-82.

When Plaintiff's attorney asked Dr. Levine to get more specific, he

replied:

> Dr. Levine: I understand. I can more give you examples than I can give you actual pound force, … and as I said sorting screws or bolts, filing papers, certainly is not an activity that requires significant pinch that I would even consider a standard pinch. Using a screwdriver requires tort. Any kind of stuck jar that requires a forceful pinching.
>
> Q: But aren't those jobs though also going to basically include the repetitive use of the upper extremities, even if we're not talking about a significant amount of weight?
>
> Dr. Levine: With the right hand he could do repetitively a third of the time in that type of ordinary activity. Left hand has no limitation relative to that.

Tr. 83-84.

The ALJ's interpretation of the medical expert's opinion regarding RFC, in light of the whole record, was reasonable. The ALJ properly found that Dr. Levine's testimony allows for occasional right "repetitive" grip and pinch, yet

the ALJ's RFC is more restrictive in not allowing for any "repetitive" grip, grasp, or pinch. Although Dr. Levine limited Plaintiff to only "occasional pinch and grip" with his right hand, he excluded such actions as writing, using a keyboard, sorting screws or bolts, and filing papers from what he considered to be normal or standard pinch and grip, instead including only those actions that were stronger or more forceful, such as hammering, using a screwdriver, or opening a jar. The ALJ reasonably interpreted "pinch and grip" to exclude standard handling of papers and other objects such as those listed above, and properly found that Plaintiff is not precluded from working at the unskilled, light and sedentary office-type jobs identified by the VE.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is affirmed pursuant to the fourth sentence of 42 U.S.C. § 405(g).

Dated this 21st day of August, 2014, at Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge